**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**RODNEY J. TENNEY,**

        **Plaintiff,**

**-vs-**　　　　　　　　　　　　　　　　　　　　　　　　　**Case No. 6:07-cv-855-Orl-DAB**

**MICHAEL ASTRUE, Commissioner of**
**Social Security,**

        **Defendant.**

_____

## MEMORANDUM OPINION & ORDER

The Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying his claim for Disability Insurance Benefits (DIB) benefits under the Act.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case. Oral argument has not been requested.

For the reasons that follow, the decision of the Commissioner is **affirmed.**

### *I. BACKGROUND*

**A.**　　**Procedural History**

Plaintiff filed for a period of disability an DIB benefits on October 9, 2002. R. 62-64. He alleged an onset of disability on May 3, 2002, due to fibromyalgia and hip, ankle, wrist, and shoulder problems. R. 30, 34, 64. Plaintiff's date of last insured for disability insurance benefits was December 31, 2003. R. 59, 65. His application was denied initially and upon reconsideration. R. 41-

42; 35-36. Plaintiff requested a hearing, which was held on February 14, 2006, before Administrative Law Judge Apolo Garcia (hereinafter referred to as "ALJ"). R.369-410. In a decision dated June 28, 2006, the ALJ found Plaintiff not disabled as defined under the Act through the date of his decision. R. 8-18. Plaintiff timely filed a Request for Review of the ALJ's decision. R. 7. The Appeals Council denied Plaintiff's request on April 11, 2007. R. 5-6. Plaintiff filed this action for judicial review on May 21, 2007. Doc. No. 1.

### B.     Medical History and Findings Summary

Plaintiff was born in October 1958 and was 45 years old at the time his insured status expired on December 31, 2003. R. 16, 59, 65. Plaintiff has a high school education and past relevant work experience as a wirer of cable/communication equipment and alarm installer, which was performed at the medium exertional level. R. 16, 69-70, 373-83.

Plaintiff's medical history is set forth in detail in the ALJ's decision. By way of summary, Plaintiff complained of herniated disks and fibromyalgia with pain in his neck, back, hips, arms, ankles, wrists, knees and head, as well as depression[1]. R. 68, 344, 361, 384. After reviewing Plaintiff's medical records and Plaintiff's testimony, the ALJ found that Plaintiff suffered degenerative disc disease and fibromyalgia, which were "severe" medically determinable impairments, but not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. R. 13, Finding 3. The ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform a reduced range of light work with no frequent bending, twisting or excessive overhead work. R. 14, Finding 5. In making this determination, the ALJ found that Plaintiff's statements concerning the intensity, duration and

---

[1] Plaintiff underwent a psychological evaluation in June 2004, approximately six months after his insured status expired, in December 2003. There was no record of treatment for depression prior to December 2003.

-2-

limiting effects of these symptoms were not persuasive of a disabling condition.[2] R. 14. Based upon Plaintiff's RFC, the ALJ determined that he could not perform past relevant work. R. 16, Finding 6. Considering Plaintiff's vocational profile and RFC, and based on the testimony of the vocational expert (VE) as well as the Dictionary of Occupational Titles (DOT), the ALJ concluded that Plaintiff could perform work existing in significant numbers in the national economy, including light work as a storage facility rental clerk, office helper and cashier. R. 17, Finding 10; R. 405-07. Accordingly, the ALJ determined that Plaintiff was not under a disability, as defined in the Act, at any time through December 31, 2003, the date last insured. R. 17, Finding 11.

Plaintiff now asserts four points of error. First, he argues that the ALJ erred by finding he had the RFC to perform light work contrary to treating doctor's statements. Second, he claims the ALJ erred by posing a hypothetical question to the VE that did not adequately reflect his limitations. Third, Plaintiff contends the ALJ erred by improperly applying the pain standard. Fourth, he asserts that the ALJ erred in evaluating his credibility. For the reasons that follow, the decision of the Commissioner is **AFFIRMED**.

## *II. STANDARD OF REVIEW*

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – *i.e.*, the evidence must do more than merely

---

[2] Within the body of the decision, the ALJ discredited Plaintiff's reported limitations based on his lack of any medical treatment for fibromyalgia from May 2002 to December 2003. R. 15. Plaintiff was not seen by a rheumatologist until February 2005, three years later. R. 15.

create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004). "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" *Id.* (internal quotation and citation omitted); *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, he is not disabled. 29 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent him from doing past relevant work, he is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering his residual functional capacity, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled. 20 C.F.R. § 404.1520(f).

### *III. ANALYSIS*

**A.     RFC and the treating physician's opinion**

Plaintiff claims that the ALJ should not have found him able to perform light work in light of limitations assigned by Dr. Hasselbring precluding the performance of sedentary work.  The Commissioner contends the ALJ thoroughly reviewed the objective evidence for the relevant time period (From May 2002 to December 2003), including the findings of Plaintiff's treating and consultative physicians, and specifically evaluated Plaintiff's subjective allegations, before properly determining Plaintiff's RFC assessment. R. 13-17.

Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite his impairments.  20 C.F.R. § 404.1545(a); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).  The focus of this assessment is on the doctor's evaluation of the claimant's condition and the medical consequences thereof. *Id.*  Substantial weight must be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise.  *See Lewis*, 125 F.3d at 1440; *Edwards*, 937 F.2d at 583; 20 C.F.R. §§ 404.1527(d), 416.927(d).  If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  *See Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986); *see also Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987).

The ALJ noted that Plaintiff was diagnosed with fibromyalgia in 2002 and was referred to a rheumatologist, however, he waited three years to see one about his condition.  The ALJ states:

> He was involved in an automobile accident in April 2001 and received medical care at Florida Hospital. He was involved in a second automobile accident on May 3, 2002. . . . He was treated by Dr. Broom for a period of time but Dr. Broom said there was nothing more that could be done. . . . The evidence shows, however, that during the relevant period, May 3, 2002, the alleged onset date, through December 31, 2003, the claimant's date last insured, the claimant received no treatment for fibromyalgia. Treatment notes from Mark A. Beckner, M.D., show that in January 2002, four months prior to his alleged onset date, the claimant was referred to a rheumatologist for further evaluation of his fibromyalgia symptoms. However, the claimant was not seen by a rheumatologist until February 2005, over three years later. The records from Dr. Caryn Hasselbring, the claimant's treating rheumatologist, and the report of a consultative physician, Dr. Nitin Haté, confirm that the claimant is now suffering from chronic fibromyalgia with 18/18 positive trigger points on examination. Unfortunately, these records are dated after the claimant's date last insured and do not address the claimant's impairments and functional limitations that were present during the period of time at issue herein.

R. 14-15.

Plaintiff contends that the ALJ erred in failing to mention or analyze the fact that Dr. Hasselbring reviewed the past medical records of Plaintiff dating back to July 5, 2002 before determining that he was disabled since at least that date. R. 361. Plaintiff argues that "a treating physician's opinion is still entitled to significant weight notwithstanding that he did not treat the claimant until after the relevant determination date." Doc. No. 15 at 14 (citing *Boyd v. Heckler*, 704 F.2d 1207, 1211 (11th Cir. 1983)[3]).

Plaintiff's Memorandum (Doc. No. 15) cites Dr. Hasselbring's September 15, 2006 RFC evaluation, which was prepared, submitted, and received after the date of the ALJ's decision, rendered on June 28, 2006 and seven months after Plaintiff's hearing on February 14, 2006. To the extent Plaintiff challenges the ALJ's decision to deny benefits, but not the AC decision to deny review of the ALJ's decision, the Court need not consider Dr. Hasselbring's September 15, 2006 RFC opinion,

---

[3]The Court notes that *Boyd* has been overruled by statute on other grounds. *See Hand v. Heckler*, 761 F.2d 1545, 1547 n.4 (11th Cir. 1985).

which was submitted to the Appeals Council, but not the ALJ – whose decision was rendered on June 28, 2006. The Commissioner contends, "[I]t should be noted that the district court does not consider evidence submitted to the Appeals Council in determining whether the ALJ's decision is supported by substantial evidence." Doc. No. 18 at 10 (citing *Ingram v. Commissioner of Social Security*, 496 F.3d 1253, 1266 (11th Cir. 2007) and *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998)).

The Commissioner's contention may have been generally true under the former precedent of *Falge*, but under *Ingram*, the court must review whether the decision to deny benefits is supported by substantial evidence in the record *as a whole*, including evidence submitted to the Appeals Council, if the plaintiff challenges the Appeals Council's decision to deny review despite receipt of the post-ALJ information. *See Hummel v. Astrue*, No. 8:06-CV-725-T-EAJ, 2007 WL 2492460, *7 (M.D. Fla. Aug. 30, 2007) (citing *Ingram v. Commissioner of Social Security*, 496 F.3d 1253, 1262, 1266 (11th Cir. 2007)). Plaintiff alleged in his Complaint that "[t]he decision of the Defendant that the Plaintiff is not disabled is not supported by substantial evidence and applies an erroneous standard of law." Doc. No. 1 ¶ 8. Defendant is the Commissioner of Social Security. Doc. No. 1 ¶ 4. Thus, under the Eleventh Circuit precedent of *Ingram*, the Court must determine whether the denial of benefits is supported by substantial evidence on the record as whole.

Dr. Hasselbring began treating Plaintiff for his fibromyalgia condition beginning in early 2005, approximately thirteen months after the date last insured. Dr. Hasselbring reviewed all of Plaintiff's medical records dating back to July of 2002. She concluded that because there was documentation of "severe, diffuse pain" and Plaintiff was "unable to sit comfortably for more than 15 minutes or stand comfortably for more than ten minutes" with a extremely limited cervical range of motion, thus, Plaintiff "has been disabled at least since July of 2002." R. 361. Dr. Hasselbring also opined that Plaintiff could sit for fifteen minutes at one time, stand for ten minutes at one time, would

require complete freedom to shift positions at will, and would be absent more than four days per month due to his condition. R. 365-66. Plaintiff contends Dr. Hasselbring's opinion is controlling because, pursuant to her review of the medical records dating back to July 5, 2002, she opined that these limitations would have been present since that date. R. 366.

Plaintiff contends that the opinion of Dr. Broom, on which the ALJ relies, that Plaintiff could not perform activities requiring frequent bending, twisting, heavy lifting or excessive overhead work (R. 193), did not take into account all of Plaintiff's conditions, namely the fibromyalgia because the notes clearly indicate he only "evaluated and treated" Plaintiff for his "neck and arm complaints following the May 2, 2002 motor vehicle accident," and not especially for fibromyalgia. R. 193. Plaintiff contends that the "ALJ does not even discuss Dr. Hasselbring's opinion." Doc. No. 15 at 14.

Plaintiff is incorrect. The ALJ specifically did discuss Dr. Hasselbring's records that report claimant is "now" suffering from fibromyalgia in 2006, well after the date of last insured, and noted, "[u]nfortunately, these records are dated after the claimant's date last insured and do not address the claimant's impairments and functional limitations that were present during *the period of time at issue herein.*" R. 15 (emphasis added). The ALJ presents a very detailed discussion of the records available from the period of time at issue:

> The medical records that are available for the period May 2002 through December 2003 show that the claimant was treated only for degenerative disc disease of his cervical spine. He was noted to have marked tenderness of his paracervical muscles and trapezius muscles and decreased range of motion of his cervical spine and shoulder. An MRI scan showed he had a disc protrusion at C6/7, but it only "minimally" flattened the ventral margin of the spinal cord and "minimally" impinged on the right C7 nerve root. Interestingly, Michael J. Broom, M.D., a spine specialist, noted that the claimant's disc protrusion was actually smaller in size than it had been one year earlier in May 2001. He did not recommend surgical intervention and instead treated the claimant with an epidural injections, a TENS unit, and non-steroid anti-inflammatory medications. The claimant reported that these treatment modalities did not work, but instead of recommending other treatment options, Dr. Broom released the claimant from his care. After he was released from Dr. Broom's care, the claimant

> sought no further medical treatment until February 2005, over two years later. *Surely if his pain were as severe as he claims, he would have sought some form of medical treatment.*
>
> In a medical statement dated October 7, 2002, just five months after the claimant's alleged onset date, Dr. Broom indicated that the claimant could perform work that did not involve frequent bending, twisting, heavy lifting and excessive overhead work. Dr. Broom's opinion is supported by clinical and laboratory findings and has been given significant weight in establishing the claimant's residual functional capacity for the relevant period herein.

R. 15 (emphasis added).

Plaintiff argues that the ALJ failed to provide any explanation for his rejection of the treating rheumatologist's opinion dating back to 2002. This is not correct. The ALJ clearly accepted Dr. Hasselbring's opinion as to Plaintiff's condition in 2005 (when he began treatment with her) through 2006, when the ALJ made his decision; however, the ALJ relied on contemporaneous records from 2002 to 2003, the period at issue, to determine the severity of Plaintiff's impairments prior to December 2003, the date of last insured. The ALJ's implicit rejection of Dr. Hasselbring's retrospective opinion and acceptance of the opinion of the spine specialist, Dr. Broom, from October 2002 was based on substantial evidence. As the ALJ noted, "[a]fter he was released from Dr. Broom's care, the claimant sought no further medical treatment until February 2005, over two years later. Surely if his pain were as severe as he claims, he would have sought some form of medical treatment." R. 15. In addition, as the Commissioner points out, January 2002 treatment notes from Dr. Mark A. Becker, four months prior to Plaintiff's alleged onset of disability indicate that Plaintiff was referred to a rheumatologist for further evaluation of his fibromyalgia symptoms, but he did not see one until February 2005, more than three years later. R. 171-72. In addition, state agency physicians reviewing the medical evidence from the relevant time period opined that Plaintiff had the capacity to perform light work. *See* R. 303-10, 336-43 (March 2003 and July 2004).

Dr. Hasselbring's September 2006 RFC evaluation (which Plaintiff cites) would have no different impact on the Commissioner's denial of benefits at the Appeals Council level, than Dr. Hasselbring's treatment notes from 2005 had on the ALJ's denial. *See Hummel*, 2007 WL 2492460 at *7 (holding denial by the Appeals Council was based on substantial evidence despite treating physician's post-ALJ RFC assessment submitted only to appeals council, where ALJ had thoroughly reviewed notes on which RFC was based). In both records, Dr. Hasselbring opines that Plaintiff's fibromyalgia symptoms and limitations began, at the earliest, on July 5, 2002, based on her review of "past records." R. 366. The fact remains, however, as the ALJ pointed out, that there were no contemporaneous medical records of fibromyalgia treatment or a record of limitations from the 2002 to December 2003 time period, despite Dr. Becker's recommended referral of Plaintiff to a rheumatologist. Substantial evidence supports the Commissioner's decision that Plaintiff was not disabled prior to December 2003.

### B.    Hypothetical to the VE

Plaintiff contends that the ALJ did not properly rely on the testimony of the VE after posing a hypothetical question that did not adequately reflect Plaintiff's limitations because the ALJ posited that Plaintiff could perform light work with no frequent bending, twisting, or excessive overhead work. R. 405.

The case law in this circuit requires that the ALJ employ hypothetical questions which are accurate and supportable on the record and which include all limitations or restrictions of the particular claimant. *Pendley v. Heckler*, 767 F.2d 1561 (11th Cir. 1985). Where the hypothetical employed with the vocational expert does not fully assume all of a claimant's limitations, the decision of the ALJ, based significantly on the expert testimony, is unsupported by substantial evidence. *Id.* at 1561 (quoting *Brenam v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980)).

As explained in detail above, the ALJ did not credit Dr. Hasselbring's opinion as indicative of Plaintiff's limitations prior to December 31, 2003, and that conclusion is adequately supported. As such, it was not error to exclude Dr. Hasselbring's limitations determined in 2005 in the hypothetical. The VE identified a storage facility rental clerk, office clerk, and a cashier as other jobs in national economy that Plaintiff could perform (prior to the date of last insured). R. 405-06.

The ALJ properly included the limitations given by Dr. Broom in the hypothetical presented to the VE. R. 406-07. The Court finds that the ALJ's reliance on these limitations is supported by the substantial evidence as set forth above, and therefore, the ALJ did not err in crafting the hypothetical presented to the VE.

### C.  **Pain and credibility**

Plaintiff asserts that the ALJ erred in evaluating his pain due to fibromyalgia and degenerative joint disease. He also argues that the ALJ erred by finding his subjective complaints credible only to the extent he is limited to a reduced range of light work. He contends that the record demonstrates his credibility and that the ALJ failed to provide adequate and specific reasons for discrediting his complaints.

Pain is a non-exertional impairment. *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence. 20 C.F.R. § 404.1528. In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the Eleventh Circuit's three-part "pain standard":

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Foote*, 67 F.3d at 1560 (quoting *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)). Pain alone can be disabling, even when its existence is unsupported by objective evidence, *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992), although an individual's statement as to pain is not, by itself, conclusive of disability. 42 U.S.C. § 423(d)(5)(A).

Although the ALJ did not refer to the Eleventh Circuit's pain standard as such, he clearly was aware of the governing standards for evaluating subjective complaints because he cited the applicable regulations and Social Security Ruling ("SSR") 96-7p. R. 14. *See Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002)(per curiam) (ALJ properly applied the Eleventh Circuit pain standard even though he did not "cite or refer to the language of the three-part test" as "his findings and discussion indicate that the standard was applied"). Moreover, the ALJ complied with those standards. He obviously determined that plaintiff had an objective medical condition that could give rise to the alleged symptoms, because otherwise the ALJ would not be required to assess the credibility of the alleged complaints.

Having concluded that he had to make a credibility determination of Plaintiff's subjective complaints, the ALJ plainly recognized that he had to articulate a reasonable basis for his determination. In that respect, in conjunction with the discussion of Plaintiff's RFC, the ALJ stated:

> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could have been reasonably expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, duration and limiting effects of these symptoms are not persuasive of a disabling condition.

R. 14. Plaintiff argues that his testimony of debilitating pain are substantiated by his many doctors' visits, use of pain medications, and other pain modalities such as physical therapy, and diagnostic tests such as MRI scans. That is certainly true as to Plaintiff's condition in 2005; however, as to his condition in 2003, the ALJ cited the lack of treatment for fibromyalgia during the relevant period of

May 3, 2002 to the alleged onset date of December 31, 2003, even though in January 2002, four months prior to his alleged onset date, he was referred to a rheumatologist for further evaluation of his fibromyalgia symptoms. R. 15. Plaintiff then waited until February 2005, over three years, before going to a rheumatologist. R. 15. As set forth in great detail above, the ALJ's decision in this regard was based on substantial evidence. The same lack of medical treatment also undercuts Plaintiff's testimony regarding limitations.

Plaintiff also contends that the ALJ erred in the credibility determination by merely indicating that the "claimant's allegations concerning marked difficulties in performing daily and work-related activities during the relevant period herein are not confirmed in the medical evidence of record as a whole" and that Plaintiff was "able to care for his personal needs." R. 16. Plaintiff argues that the ALJ merely focused on certain statements of the claimant, and not his entire testimony, and should not have based a credibility determination on Plaintiff's participation in "everyday activities of short duration [which] does not disqualify a claimant from disability. Doc. No. 15 at 19-20 (citing *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997)).

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Jones v. Dep't of Health and Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *Foote*, 67 F.3d at 1561-62; *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

In this case, the ALJ offered specific reasons for discrediting Plaintiff's subjective complaints. The ALJ's reasons included the lack of medical treatment for the period at issue and inconsistencies between Plaintiff's statements and his activities of daily living. The ALJ considered the relevant

medical evidence for the time period at issue, May 2002 to December 2003.  In February 2003, Dr. Broom found no medical evidence to substantiate the use of a cane. R. 192.  In October 2002, Dr. Broom only assigned a 3% whole body impairment. R. 193.

Plaintiff admitted at the hearing that he had been advised to exercise to help with his fibromyalgia. R. 390.  In fact, Dr. Hasselbring noted her emphasis on exercise in her assessment/plan for Plaintiff:

> History and clinical examinations do not really correlate or point to any pathology at this time.  Only clinical history and the clinical examination points to the fact that the complaints really fit into a diagnosis of fibromyalgia, the diagnosis which was already made in 1992.  Start [medications] . . . PT, *especially pool exercises*.  Patient has been counseled about fibromyalgia and told that this is not a debilitating disease.  It does not involve the muscles or the joint and there is no degenerating process going on in either the muscles or the joints.  *The pain would decrease and subside to a great extent* with the use of SSRI, muscle relaxant and PT, but he may not be relieved of pain completely.  It has been emphasized to the patient that should the therapy especially the pool exercises [sic] are the ones which are really going to help him a lot.  Patient has been advised not to take narcotics from anywhere and no narcotics have been prescribed from this office for the patient.

R. 348 (emphasis added).  These are factors the ALJ is directed to consider. 20 C.F.R. §§ 404.1529; 416.929.  The ALJ's reasons are supported by substantial evidence.

## *IV. CONCLUSION*

The record in this case shows that Plaintiff does not enjoy full health and that his lifestyle and activities are affected by his ailments to some degree.  The ALJ appropriately considered these circumstances and analyzed them in relation to Plaintiff's past medical treatment and the exacting disability standard under the Social Security Act.  For the reasons set forth above, the ALJ's decision is consistent with the requirements of law and is supported by substantial evidence. Accordingly, the Court **AFFIRMS** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Orlando, Florida on August 18, 2008.

*David A. Baker*
DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record